UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MR. AND MS. DOE, *both individually and on behalf of their minor daughter,* JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>REGIONAL SCHOOL UNIT 21, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 2:23-cv-00466-JAW<br>)<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS' UNOPPOSED MOTION TO SEAL**

In line with well-established precedent on the common law presumption of the right of public access to judicial records, the court dismisses the defendants' unopposed motion to seal a settlement agreement and orders the agreement unsealed. For the same reason, the court also orders that the defendants' motion and brief in support of sealing the settlement agreement be unsealed.

**I.   PROCEDURAL HISTORY**

On December 28, 2023, Mr. and Ms. Doe, each appearing individually and on behalf of their minor daughter Jane Doe, filed a complaint against Regional School Unit 21 (RSU 21 or the District); Dr. Terri Cooper, the District's Superintendent; and Anita Bernhardt, the District's Assistant Superintendent (collectively, the Defendants), *Compl.* (ECF No. 1), asserting claims under § 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and the First Amendment to the United States Constitution. *Id.* ¶¶ 167-82. That same day, Mr. and Ms. Doe filed a

motion for preliminary injunction. *Mot. for Prelim. Inj.* (ECF No. 5). On January 26, 2024, Dr. Cooper and Ms. Bernhardt (jointly, the Individual Defendants) filed a motion to dismiss for failure to state a claim. *Mot. to Dismiss for Failure to State a Claim* (ECF No. 22) (*Defs.' Mot.*). On September 6, 2024, the Court dismissed the Individual Defendants' motion to dismiss and the Plaintiffs' motion for preliminary injunction. *Order on Mot. to Dismiss and Mot. for Prelim. Inj.* (ECF No. 28).

The parties subsequently entered settlement negotiations. On December 11, 2024, the parties participated in a judicial settlement conference with the United States Magistrate Judge at which they reached a settlement, and later filed a joint application for approval of minor settlement. *Min. Entry* (ECF No. 38); *Defs.' Unopposed Mot. to Seal* at 1 (ECF No. 43); *Def.'s Unopposed Mot. to Seal*, Attach. 1, *Joint Verified Appl. for Approval of Minor Settlement with Inc. Statement Pursuant to D. Me. Loc. R. 41.2* (*Joint Appl. for Settlement Approval*). On January 29, 2025, the Defendants filed an unopposed motion to seal the joint verified application for approval of minor settlement that the Plaintiffs consented to, in which they further requested a conference with the Court. *Defs.' Unopposed Mot. to Seal.*

At a teleconference of counsel on February 24, 2025, the Court discussed with the parties the Court's obligation to follow the law on, among other things, the right of public access to judicial records, despite the consented-to motion to seal. *Min. Entry* (ECF No. 45). At the teleconference, Plaintiffs' counsel acknowledged that under the settlement agreement, the Plaintiffs had promised to allow confidentiality to the extent permitted by law. At the same time, Plaintiffs' counsel observed that

2

district court judges had issued decisions not allowing secrecy in minor settlement cases, and Plaintiffs' counsel brought this issue to the attention of Defendants' counsel. Thus, Plaintiffs' counsel was careful to say that they were not opposing the Defendants' effort to seal the settlement, but they also understood that this Court was going to undertake an independent review and make its own decision.

Upon request, the Court allowed the Defendants to file a memorandum responding to the Court's concerns, *id.*, and, in compliance with the Court's directive, the Defendants filed a supplemental memorandum in support of their motion to seal on March 3, 2025. *Defs.' Suppl. Mem. of Law in Support of Mot. to Seal* (ECF No. 46) (*Defs.' Suppl. Mem.*). The Court allowed the Plaintiffs to file a response, but Plaintiffs' counsel indicated by email that they did not intend to do so.

The Court issues this order to address the pending motion requesting an order sealing the joint application for approval of minor settlement.

## II.   THE DEFENDANTS' MOTION TO SEAL

### A.   The Defendants' Unopposed Motion to Seal

The Defendants' unopposed motion to seal argues "a covenant of confidentiality to the extent permitted by law" is "an essential element" of the parties' settlement agreement and accordingly asks the Court to permit the filing of the joint motion for approval of minor settlement under seal. *Defs.' Unopposed Mot. to Seal* at 1 (discussing *Joint Appl. for Settlement Approval*).

Turning to their legal arguments, Defendants contend, first, that there is no clearly established right of public access to documents filed in civil cases under the

3

First Amendment. *Id.* at 2 (citing *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 (1st Cir. 2022)). Acknowledging that federal circuit courts have recognized the presumptive right of public access to other aspects of a civil case, they allege "[i]n none of these cases [cited by the First Circuit in *Courthouse News*] has a court addressed the question of whether there is a presumptive right of public access to documents reflecting a settlement." *Id.* at 2-3 (collecting cases).

Next, Defendants argue that if there is a right of public access to settlement documents, it is necessarily a qualified right and must consider factors such as whether "the settlement implies 'sensitive information about [a] minor[],' [including] the 'severity and expected duration of [her] emotional and mental injuries.'" *Id.* at 3 (quoting *Willis v. United States*, CV 117-015, 2019 U.S. Dist. LEXIS 221109, at *5 (S.D. Ga. Dec. 26, 2019) (citation amended)).

Defendants proffer that the facts of this case overcome the presumption of public access and warrant sealing "any documents that would reflect the terms of the settlement in this case." *Id.* (capitalization altered). They assert, first, that although the Plaintiffs have proceeded under pseudonyms in this case, "the allegations in their Complaint were previously [] made known to the public in the context of a meeting of RSU 21's School Board" and "[t]herefore there is a substantial likelihood that members of the public viewing the court docket would be able to identify Mr. and Mrs. Doe, and their minor child." *Id.* at 4.

They allege, second, that "because Jane Doe's condition was described in a School Board meeting that was open to the public, disclosure of the amount of the

4

settlement could be interpreted by those viewing the court record as implying 'sensitive information' about the minor child's emotional health." *Id.*

Third, Defendants argue that disclosure of the settlement documents would conflict with the policies reflected in the Federal Education Records Privacy Act (FERPA) because (1) they "contain information directly related to [Jane Doe]", and (2) the settlement documents, when combined with the information previously made public, "would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty," thus making them "personally identifiable." *Id.* (quoting *Belanger v. Nashua, N.H., Sch. Dist.*, 856 F. Supp. 40, 48 (D.N.H. 1994)).

Fourth, they argue "there is a risk that this settlement will be misconstrued by any member of the community who becomes aware of its terms, and the agreed confidentiality term will preclude any party . . . from correcting the resulting misconception." *Id.* at 5.

### B. The Defendants' Supplemental Memorandum

Responding to the concerns the Court raised about sealing at the February 24, 2025 telephone conference of counsel, Defendants first concede that "there is substantial support in the case[]law for the proposition that sealing is not justified in circumstances where the substance of the information that is the subject of a motion to seal already appears in the part of the court record that is accessible to the public." *Defs.' Suppl. Mem.* at 2 (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (a court need not engage in the futile exercise of trying to "make what has

5

thus become public private again")). However, Defendants contend "there is a fundamental difference between what a litigant says in a Declaration and a settlement agreement made on behalf of a minor." *Id.* Elaborating on their position, Defendants explain that while a litigant's allegations in a declaration "are assumed to be self-serving," a minor settlement agreement "is presumed to reflect compensation that is at least fair . . . to the child, and it may bear little relation to a parent-plaintiff's description of the harm she thinks her child has suffered." *Id.* at 2-3. They contend this characterization is apt in the instant case because Ms. Doe submitted a declaration in which she "subjective[ly] characterize[ed] . . . her daughter's anxiety and its effect on her ability to attend school." *Id.* at 3 (citing *Pl[s].'[] Mot. for Prelim. Inj.*, Attach 1, *Decl. of Ms. Doe in Support of Pl.'s Mot. for Prelim. Inj.* ¶¶ 23, 24, 34, 36, 38, 39, 44, 158, 159 (ECF No. 5)).

Referencing FERPA, Defendants continue that Jane Doe's parents generally have the right to disclose to the public information about their daughter's education, but the Defendants do not have the same right under FERPA and thus "must take all measures within their power to avoid being seen as sharing with the public any information about Jane Doe's mental health and education progress." *Id.* at 3-4. Defendants are concerned that "[m]aking the settlement a public record *could* . . . be construed by a member of the public as conveying *the Defendants'* view that Jane Doe *has* suffered emotional or educational issue," which "would be problematic under FERPA." *Id.* at 4 (Defendants' emphasis).

Next, Defendants proffer "[i]f the Court concludes that the public's interest in having access to information about the expenditure of government funds is a decisive factor in whether or not to seal the Application for Approval of Minor Settlement, it should be aware that *only* the Plaintiff[s'] attorney[']s] fees are to be paid from the public coffers," explaining "[t]he payment for the benefit of Jane Doe will come from RSU 21's liability insurance company [and] [t]he public has no heightened interest in knowing how the insurance company spends its money." *Id.* (Defendants' emphasis).

In conclusion, Defendants ask for the Court's permission to file the joint application for approval of minor settlement under seal. *Id.* at 5.

## III. LEGAL STANDARDS

The First Circuit has explained that there are "two related but distinct presumptions of public access to judicial proceedings and records: a common-law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (quoting *In re Providence J.*, 293 F.3d 1, 9 (1st Cir. 2002)).

### A. The First Amendment Right of Access

In its description of the First Amendment right of access, the First Circuit was careful to observe that this right of access relates to "certain <u>criminal</u> proceedings and materials submitted therein." *Id.* (emphasis supplied). In *Courthouse News*, the First Circuit wrote: "[n]either this court nor the Supreme Court has recognized any right under the First Amendment to access documents filed in civil cases." 32 F.4th at 20.

7

At the same time, in *Courthouse News*, the First Circuit noted that the "parties agree that there is a qualified First Amendment right in the public to access newly filed complaints." *Id*. Also in *Courthouse News*, the First Circuit cited *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10-11 (1986), as suggesting that there is such a right and *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992), as suggesting there is not. The First Circuit then resolved the appeal based on the parties' agreement that the First Amendment applied. In *El Dia*, the First Circuit wrote that it "seriously question[ed] whether *Richmond Newspapers* [*Inc. v. Virginia*, 448 U.S. 555 (1980)] and its progeny carry positive implications favoring rights of access outside the criminal justice system." 963 F.2d at 495.

Based on the unsettled state of Supreme Court and First Circuit authority and, unlike in *Courthouse News*, an absence of agreement in this case as to the applicability of the First Amendment to this civil action, the Court follows the prudential practice of the First Circuit of "forgoing broad constitutional holdings unless such holdings are unavoidable." *Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018) (citing *Hudson Sav. Bank v. Austin*, 497 F.3d 102, 106 (1st Cir. 2007) and *El Dia*, 963 F.2d at 494). When faced with whether to rest on the First Amendment issue in *Kravetz*, the First Circuit generally declined to reach the constitutional claim and instead resolved the public access issue using the standards in the common law right of access. 706 F.3d at 53.

    **B.**    **The Common Law Right of Public Access**

8

The First Circuit extensively discussed the right of public access in *Kravetz* and reiterated that "[c]ourts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honest and respect for our legal system.'" 706 F.3d at 52 (quoting *In re Providence J.*, 293 F.3d at 9 (in turn quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). To uphold these values, once it is determined that the document is a so-called "judicial record," a presumption that it is public applies. *Id.*

The First Circuit explained that a "judicial record" is a document that is "submitted by parties to aid in the adjudication of" an issue before the court and that is "meant to impact the court's disposition of substantive rights." *Id.*; *accord United States ex rel. Nargol v. Deputy Orthopaedics, Inc.*, 69 F.4th 1, 15 (1st Cir. 2023) (stating judicial records are "those 'materials on which a court relies in determining the litigants' substantive rights'") (quoting *Kravetz*, 706 F.3d at 54). Thus, in *Kravetz*, a criminal case, the First Circuit decided that there is a right of public access to sentencing memoranda and support letters intended to influence a sentence. *Id.* at 56-59. The *Kravetz* Court rejected the argument that a judicial record need be disclosed only if it actually influenced a judge's decision. *Id.* at 58-59.

At the same time, the *Kravetz* Court observed that "[t]hough the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle*, 147 F.3d at 10). In other words, while the presumption is broad, there are exceptional circumstances that may counter it. However, the First Circuit

9

cautioned "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence J.*, 293 F.3d at 10 (in turn quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

In balancing the competing interests in cases where the presumption of public access applies, the district court should consider whether the "personal privacy interests of third parties" are at stake. *Id.* at 61. "[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Id.* at 62 (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411) (quotation marks omitted). The First Circuit directed district courts to "weigh heavily" the privacy interests of third parties in the court's balancing analysis.

In addition, the First Circuit directed the district courts to "consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (quoting *United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 190 (1st Cir. 2003)). "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). Addressing sentencing letters in the criminal context, the First Circuit wrote that "discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters" involves "highly personal"

information and "appears to have no direct bearing on the public's assessment of the sentences imposed." *Id.* at 62.

The *Kravetz* Court also discussed the right of public access to medical information. *Id.* at 63. It began with the premise that "[m]edical information is . . . 'universally presumed to be private, not public.'" *Id.* Even so, "[a]cknowledging the presumptively private nature of medical information does not end the matter" because "[t]he privacy interest in medical information is 'neither fundamental nor absolute.'" *Id.* (citation omitted). In this context, the *Kravetz* Court quoted the Second Circuit in saying that "[c]ourts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." *Id.* (quoting *Amodeo*, 71 F.3d at 1051).

### C. Public Right of Access to Minor Settlement Agreements

The First Circuit has not directly addressed public access to motions for judicial approval of settlement agreements. However, the Seventh Circuit considered the issue in depth in *Goesel v. Boley International (H.K.) Ltd.*, 738 F.3d 831 (7th Cir. 2013). After noting that settlement agreements reached without court assistance or intervention are not treated as "judicial records," the Seventh Circuit observed that "settlement terms are of potential public interest only when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced." *Id.* at 834 (collecting cases from the Seventh and Eleventh Circuits). The *Goesel* Court wrote that "[i]n all such cases the presumption of a right of public access to court documents should apply." *Id.* In *Goesel*, the Seventh Circuit

11

rejected a motion to seal the settlement document, *id.* at 835, and, "[f]ollowing *Goesel*, courts in [the Seventh Circuit] have denied requests to seal judicially-approved settlement agreements." *Gratton v. Cielo, Inc.*, No. 23-cv-1647-bhl, 2024 U.S. Dist. LEXIS 135178, at *6 (E.D. Wis. July 31, 2024) (collecting cases).

*Goesel* has also been followed in courts beyond the Seventh Circuit. *See Carrasquillo v. Bhatia-Gautier*, 590 F. Supp. 3d 444, 451 (D.P.R. 2022); *Kaufman v. Jetson Elec. Bikes, LLC*, No. 22-cv-3765, 2024 U.S. Dist. LEXIS 11419, at *6-7 (E.D. Pa. Jan. 23, 2024); *Shannon Brewster as Adm'x of the Est. of Alan E. Brewster v. Larry Strickland Trucking LLC*, 2:24-cv-00096, 2024 U.S. Dist. LEXIS 150531, at *1-4 (S.D. W. Va. Aug. 22, 2024); *Dilliner v. GM, LLC*, Civ. Action No. 2:19-cv-00415, 2021 U.S. Dist. LEXIS 31337, at *9 (S.D. W. Va. Feb. 19, 2021); *Bruning v. Chizek Elevator & Transp., Inc.*, No. 4:16-CV-0342-DGK, 2017 U.S. Dist. LEXIS 76409, at *2-3 (W.D. Mo. May 19, 2017); *Willis v. United States*, CV 117-015, 2019 U.S. Dist. LEXIS 221109, at *4 (S.D. Ga. Dec. 26, 2019) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case") (quoting *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)).

### D.  Expenditure of Public Funds

As the settlement in this case involves the expenditure of public funds, "the presumption of public access is 'accentuated.'" *Carrasquillo*, 590 F. Supp. 3d at 450 (citing *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410). In *Federal Trade Commission v. Standard Financial Management Corp.*, 830 F.2d 404 (1st Cir. 1987), the First Circuit wrote:

> The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.

*Id.* at 410.

## IV. DISCUSSION

Here, the parties move the Court to seal their minor settlement agreement. Preliminarily, the Court observes that the Plaintiffs in this case have proceeded under pseudonyms: Mr. and Ms. Doe on behalf of their minor daughter, Jane Doe. *Compl.* ¶ 1. The Defendants have never challenged the Plaintiffs' right to proceed in this case under pseudonyms, nor has this Court. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 72 (1st Cir. 2022); *Spurwink Servs., Inc. v. Doe*, 2:25-cv-00026-JCN, 2025 U.S. Dist. LEXIS 36841, at *1-4 (D. Me. Feb. 25, 2025). The First Circuit has recommended use of redaction, which is similar to pseudonyms, to balance legitimate privacy interests against the public right of access. *Kravetz*, 706 F.3d at 63. Although some inquisitive or local individuals might be able to figure or ferret out who the Plaintiffs are, there is no reason on this record for the Court to assume that if they are so interested, they have not already done so based on what is already on the docket. The cumulative information in the settlement agreement gives no reason for the Court to conclude that it should be sealed.

Even though the right of public access applies to civil matters, it is "not unfettered." *Kravetz*, 706 F.3d at 59 (quoting *Siedle*, 147 F.3d at 10) (in turn quoting *FTC*, 830 F.2d at 410). The United States Supreme Court in *Warner Communications* wrote that the sealing of a settlement agreement, like other sealing

13

decisions, is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *P.R. Land & Fruit, S.E. v. Municipio De Culebra*, No. 09-2280 (ADC/BJM), 2018 U.S. Dist. LEXIS 221026 (D.P.R. Oct. 24, 2018), *aff'd* 2019 U.S. Dist. LEXIS 20203 (D.P.R. Feb. 5, 2019) (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599 (1978)).  To order sealed or redacted an otherwise publicly accessible document, such as a settlement agreement, the trial court is required to make "particularized findings of fact." *Id.* at *18 (quoting *Kravetz*, 706 F.3d at 59).  Moreover, as the magistrate judge in *Puerto Rico Land & Fruit* suggested, the parties may not simply file a settlement agreement and expect it to be sealed without offering a basis for doing so.  2018 U.S. Dist. LEXIS 22106, at *18 ("The docket shows that a formal motion to seal this agreement was never filed or supported by the parties").  Here, the Defendants have properly moved for the Court to seal the minor settlement agreement.  The question is whether they have successfully supported their request.

First, Defendants contend the presumption of public access is overcome because the settlement agreement includes information about Jane Doe, a minor.  Conceding that information about Jane Doe's education and medical health is already publicly available on the docket, they insist she could be more readily identified if the settlement agreement is published unsealed.  They argue, further, that the information in the settlement agreement is different in kind from the subjective statements Jane Doe's mother made about her daughter in her declaration.

The Court is not persuaded. Based on the Plaintiffs' counsel's responses at the teleconference, the Court is not at all certain that the Plaintiffs are actively pursuing a sealing of the motion for court approval of the settlement. As explained by Plaintiffs' counsel, they agreed not to oppose the Defendants' motion, but the Court interprets Plaintiffs' counsel's statement as not independently pressing the Court to seal the settlement. As such, the Court doubts that to the extent the Defendants are attempting to have the court records sealed because of the privacy concerns not pressed by the Plaintiffs themselves, the Defendants have standing to claim privacy rights on behalf of opposing parties who may not be claiming them themselves.

Second, the complaint in this case, which is already publicly available, is extremely detailed and provides significant information about Jane Doe's education and her medical history. The complaint contains one hundred and eighty-two paragraphs. *Compl.* ¶¶ 1-182 (ECF No. 1). These one hundred and eighty-two paragraphs reveal, among other details, Jane Doe's age, her current and former schools, the year she entered the Kennebunk school system, her homeroom teacher, her Social Studies teacher, and it sets forth in depth the nature of her disability and her efforts and the efforts of parents, her friends, and the school system to integrate her into the school. *See, e.g., id.* ¶¶ 12, 14, 22, 43. The extraordinarily detailed complaint would be sufficient for anyone familiar with Kennebunk, a town of less than 12,000 residents, to identify Jane Doe. Moreover, the complaint described an opinion letter written by Jane Doe's mother that was published in the Portland Press Herald, described the contents of that letter, and revealed the date it was published.

*Id.* ¶¶ 15-19. Furthermore, as Defendants acknowledge in their motion to seal, the complaint was buttressed by a detailed sworn declaration by Ms. Doe consisting of forty-six pages and one hundred and fifty-nine paragraphs, again containing day-to-day details about Jane Doe, her medical history, and her interaction with the school system. *See Pl[s.'] Mot. for Prelim. Inj.*, Attach. 1, *Decl. of Ms. Doe in Support of Pls.' Mot. for Prelim. Inj.* (ECF No. 5).

The Court is not convinced that the brief statements in the verified application for approval of minor settlement should be viewed differently than the allegations in a complaint or the facts in a sworn declaration. If anything, a settlement application is more ambiguous than the alleged facts in a complaint or the sworn contents of a declaration. It implicitly contains evaluations of the prospects of success at trial; the cost, time, and trouble of a successful prosecution or defense of the case; the provable damages; and the impact of a trial on the minor, to name a few factors. The notion that some people may misconstrue the settlement—either deliberately or not—is pure speculation. Furthermore, the possibility of public misconstruction is part of the cost of the expenditure of public funds to resolve any litigation subject to court approval and is, moreover, not grounds for sealing.

Even if the Court were to credit the Defendants' argument that facts presented in a different light in a complaint and sworn declaration as opposed to a settlement agreement somehow warrants the agreement's sealing, the reality is that what is already publicly available about this case overwhelms the modicum of information in the settlement agreement. Indeed, in the joint verified application for approval of

16

minor settlement contains almost no information about this case. Its "information concerning Jane's damages," for example, consists of only two sentences, contains almost no personal information about Jane Doe, and by the Court's reckoning, includes no information not already made public by the Plaintiffs. *See Joint Appl. for Settlement Approval* at 2. By contrast, this entire case has revolved around the specific facts of this minor's education, her medical history, and her Individualized Education Plan.

By the Court's read, the only information in the settlement agreement not already publicly available is the settlement amount. *See Kravetz*, 706 F.3d at 63 ("[T]he interests in privacy fade when the information involved already appears on the public record") (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975)). The Defendants seek to keep this amount from the public view out of concern that members of the public may infer something about the parties' respective liability and the Defendants' disregard for their obligations under FERPA.

The Court is again unpersuaded. First, as already noted, it is not convinced that the settlement amount reveals anything about Jane Doe that has not already been made public. Second, the settlement amount is precisely the type of information to which the right of public access most strongly attaches, because it reveals the expenditure of public funds. *See Carrasquillo*, 590 F. Supp. 3d at 450; *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. Third, it would be an unusual case where a court should properly concern itself with what members of the public might do with information about a settlement. *Kravitz*, 706 F.3d at 64 ("[A] fear of adverse publicity

17

. . . is insufficient to defeat public access"). Apart from being highly speculative and a factor the Defendants could have (and should have) considered before agreeing to enter into the settlement, members of the public are free to draw their own separate conclusions about the settlement. Instead, the Court's concern, pursuant to the First Circuit's holding in *Kravetz*, is whether the presumptive right of public access to a judicial record is overcome by "[i]mportant countervailing interests." *Id.* at 59 (quoting *Siedle*, 147 F.3d at 10).

In short, the Court firmly rejects the Defendants' attempts to enlist the Court in its efforts to hide from the public its expenditure of public funds.

## V.  CONCLUSION

The Court DISMISSES without prejudice Defendants' Unopposed Motion to Seal (ECF No. 43) and accordingly ORDERS Defendants' Unopposed Motion to Seal, Attachment 1, Joint Verified Application for Approval of Minor Settlement with Incorporated Statement Pursuant to D. Me. Loc. R. 41.2 (ECF No. 43-1) be UNSEALED. As the ground for the automatic sealing of the Defendants' motion and brief in support of sealing the settlement agreement is now moot, the Court also ORDERS Defendants' Unopposed Motion to Seal (ECF No. 43) and Defendants' Supplemental Memorandum of Law in Support of Motion to Seal (ECF No. 46) UNSEALED.

SO ORDERED.

                                         /s/ John A. Woodcock, Jr.
                                         JOHN A. WOODCOCK, JR.
                                         UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2025